**UNITED STATES of America,
Plaintiff-Appellee,**

v.

Salvador **BUGARIN–CASAS,** Defendant-Appellant.

**No. 73–1559.**

United States Court of Appeals,
Ninth Circuit.

Aug. 15, 1973.

Certiorari Denied Jan. 7, 1974.
See 94 S.Ct. 881.·

Robert W. Ripley, Jr., Federal Public Defender (argued), San Diego, Cal., for defendant-appellant.

Harry D. Steward, U. S. Atty. (argued), Stephen G. Nelson, William A. Bower, Asst. U. S. Attys., San Diego, Cal., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and RENFREW,* District Judge.

OPINION

DUNIWAY, Circuit Judge:

At about 7:30 on the morning of December 8, 1972, appellant Bugarin-Casas was driving a Ford station wagon alone along Interstate Highway 8 in southern California. Two Border Patrol agents

---

* The Honorable Charles B. Renfrew, United States District Judge for the North- ern District of California, sitting by designation.

on roving patrol, Henderson and Gilbert, were parked on the side of the highway observing traffic. That particular stretch of Interstate 8 was known by the agents to be an area with a high incidence of transportation of "illegal" aliens. When Bugarin's car passed by them, the agents noted that Bugarin appeared to be of Mexican descent, that he was apparently alone in the car, and that the car was "riding low" in the rear. Agent Gilbert was aware that a station wagon of that model had a compartment in the rear into which the back seats could be folded, and that aliens had been found hidden in such compartments. Their suspicions aroused, the officers stopped the car. The stop was made about twelve to fifteen miles from the Mexican border.

Agent Gilbert approached Bugarin, who remained in the car, and asked his citizenship. Agent Henderson walked to the rear of the car. While Gilbert was questioning Bugarin, Henderson saw through the rear window that the floorboard panels covering the compartment were slightly ajar. Through a crack about an inch and a half wide he saw packages, wrapped in blue paper and covered by cellophane, underneath the panels. In his 16 years as a Border Patrol agent he had seen kilo packages of marijuana similarly wrapped "hundred of times," and he concluded immediately that the packages contained marijuana.

Gilbert told Bugarin to open the back of the station wagon. Bugarin got out of the car, opened the rear window of the station wagon, and then lowered the tailgate. Gilbert too saw the packages. The agents then opened the compartment and found a considerable quantity of marijuana. Bugarin was arrested.

A pre-trial motion to suppress the marijuana was denied. Bugarin was convicted of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a). On appeal Bugarin contends only that his motion to suppress should have been granted.

We delayed submission of the case pending decision by the Supreme Court of Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (June 21, 1973), because the government relied primarily on our decision in that case to sustain the search (United States v. Almeida-Sanchez, 9 Cir., 1971, 452 F.2d 459). In its decision, the Supreme Court held that border patrol agents, on roving patrol such as this one, cannot stop and search cars, pursuant to 8 U.S.C. § 1357 and 8 C.F.R. § 281.7, without probable cause or a warrant. We conclude, however, that Almeida-Sanchez does not control this case.

■■■ We have held that a stop may be made by such agents, based on a "founded suspicion," which may be less than probable cause. United States v. Barron, 9 Cir., 1972, 472 F.2d 1215; United States v. Roberts, 9 Cir., 1972, 470 F.2d 858; United States v. Brown, 9 Cir., 1970, 436 F.2d 702; Wilson v. Porter, 9 Cir., 1966, 361 F.2d 412. If after a valid investigatory stop probable cause arises, the search may then be made. United States v. Roberts, supra; United States v. Leazar, 9 Cir., 1972, 460 F.2d 982; Duprez v. United States, 9 Cir., 1970, 435 F.2d 1276; United States v. Blackstock, 9 Cir., 1971, 451 F.2d 908. Here, without a search, agent Henderson saw packaged marijuana in plain view. At that point probable cause had arisen to justify the search, which Henderson testified he would have undertaken had Gilbert not done so himself.[1]

---

1. The fact that the agents were intending at the time they stopped the car to search it in any event—generally the sort of search held unconstitutional in Almeida-Sanchez v. United States, supra,—does not render the search, supported by independent probable cause, invalid. See Williams v. United States, 9 Cir., 1959, 273 F.2d 781, 790–795, cert. denied, 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 868; Green v. United States, 10 Cir., 1967, 386 F.2d 953; Sirimarco v. United States, 10 Cir., 1963, 315 F.2d 699, cert. denied, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1032; see also Lowe v. United States, 9 Cir., 1969, 407 F.2d 1391.

The question remains whether the stop itself was valid—i. e., whether there existed the requisite "founded suspicion." Bugarin argues that under United States v. Mallides, 9 Cir., 1973, 473 F.2d 859, the stop was invalid *ab initio*. In *Mallides* we held that the presence of six men, apparently of Mexican descent, sitting "stiffly" in a large sedan and not turning to look at a passing police car, did not itself justify stopping the car on the suspicion that the passengers were "illegal" aliens, even though the area in which the car was stopped was one with a high incidence of "illegal" alien activity. We emphasized that the mere fact that a passenger in an automobile appeared to be of Mexican descent would not indicate whether he was "an American citizen, a Mexican national with proper entry papers, or a Mexican alien without papers." *Id.* at 860. The focus in *Mallides* was clearly on the question of the likely race or national origin of the passenger, alone, as justifying the stop.

Here more was involved. Although agent Gilbert did at one point, as Bugarin emphasizes, answer affirmatively the question, "Was [the fact that Bugarin appeared to be of Mexican descent] the primary reason you stopped him?", both Gilbert and Henderson testified that it was a number of factors in addition to Bugarin's Mexican appearance that led them to stop the car—the fact that he was alone, the fact that the car was riding low (particularly unusual in that there was only one visible passenger), and the fact that the agents knew that the model car Bugarin was driving was of the sort that had been used to secrete aliens in a floor compartment over the rear axle.[2] If Bugarin had not been of apparent Mexican descent, we think that these other factors were sufficient to justify the stop. *See* United States v. Roberts, *supra.* It follows that the fact that Bugarin did appear to be of Mexican descent—even considering that this was one of the factors that led the agents to make the stop —should not require a different holding in this case.[3] *Mallides, supra,* certainly does not stand for the proposition that if agents have grounds for a stop, they are forbidden to make the stop because the driver appears to be of Mexican de-

---

2. Appellant's counsel asked Agent Henderson:

"Q. In this particular instance, did you happen to notice the defendant's ethnic background, or where he was from, before you stopped him?

A. He appeared to be of Mexican descent.

Q. Was that one of the reasons he was stopped?

A. No. Not as such, no. Just the fact that the vehicle was sitting low in the rear, with only one passenger, or one person showing in the vehicle at that time of day. It is very common as an alien smuggling operation in that particular area.

Q. Do you stop every car that passes your area that's low in the rear?

A. No.

Q. So it's actually a combination of factors, isn't it, that creates the necessity for the stop, in your mind?

A. Yes, it's a combination of factors."

Appellant's counsel also questioned Agent Gilbert:

"Q. Now, in the past, when you've stopped persons driving cars on this Route 8, at that junction, and there has been a Mexican person driving, have you stopped most of these cars when the person is alone?

\*    \*    \*    \*    \*

A. It depends on the circumstances. No, I do not stop every person I see of Mexican descent. I usually have some other reason, due to my experience, that I feel to stop them for.

Q. So Mexican descent combined with the lowness of the automobile, or some other factor that would make this car unusual to you. Would that be correct?

A. Yes, sir."

3. Agent Henderson testified that about 50% of the "low-riding" cars that he stopped are driven by those appearing to be Mexican. Thus the agents might well have stopped Bugarin's car had he not appeared to be of Mexican descent.

scent. It only holds that the apparent ethnic background of persons in a car is a neutral fact, justifying neither a stop nor a search.

Affirmed.