UNITED STATES of America, Plaintiff-Appellee,

v.

Salvador MORENO–BUELNA, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Raul NAVA–FLORES, Defendant-Appellant.

Nos. 75–1120, 75–1119.

United States Court of Appeals, Ninth Circuit.

Sept. 19, 1975.

Certiorari Denied Dec. 15, 1975. See 96 S.Ct. 570.

Michael J. McCabe (argued), San Diego, Cal., for defendants-appellants.

Jeffrey F. Arbetman, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

## OPINION

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and REAL,* District Judge.

REAL, District Judge:

These appeals involve the legality of a search made without a warrant.

Agents of the Drug Enforcement administration, after having received information of an informant, commenced surveillance at about 3:00 P.M., November 5, 1973. Observing the vehicle—a blue Pontiac—license number HGP 761—previously described to them—enter the United States from Mexico, the agents followed the Pontiac to a residence in Calexico.

At the residence two females exited the Pontiac, met with other people at the residence, and then departed the residence in another vehicle.

Sometime later a white pickup equipped with a shell-type camper arrived at the residence driven by a male person. The driver of the pickup entered the residence. Shortly thereafter, a white Dodge that had been parked in the driveway of the residence was moved and another male person moved the Pontiac into the driveway. Two males were observed for about ten minutes making two trips from the back seat of the Pontiac to the rear of the residence.

At approximately 6:00 P.M. the Pontiac, driven by a single male, departed, proceeded south and went into Mexico.

Continuing surveillance the agents saw no lights or activity in or about the residence until approximately 3:30 the next morning when lights were then observed being turned on. Shortly, a station wagon arrived in the vicinity of the residence and the driver walked to the residence.

Continuing observation, the agents saw a white-colored pickup with a camper shell arrive shortly after the station wagon. Still another vehicle this one a blue Chevrolet pickup arrived, left, came back and was observed to be driven around to the rear of the residence. Agents observed the lights go off in the residence and two persons walking from the back of the residence to the truck, and appeared to be putting some bags into the back of the blue pickup.

At about 6:00 A.M. the agents saw two male persons enter the blue Chevrolet pickup and depart. Following this vehicle the agents proceeded on a somewhat circuitous route through residential areas without seeming reason to Heber, then to Highway Interstate 8 where they proceeded in a westerly direction. Enlisting the Border Patrol the vehicle was stopped in the Jacumba area and searched. Finding a quantity of marijuana Appellants Nava-Flores and Moreno-Buelna were arrested.

Subsequently convicted in a Court trial, after denial of a motion to suppress

---

* Honorable Manuel L. Real, District Judge, Central District of California, sitting by designation.

they now appeal urging that the trial judge erred in two respects.

1. Refusal to require disclosure of the informant, and

2. Denial of the motion to suppress.

■ Disclosure of the identity of the informer was not necessary under the established law of this Circuit explicated in *United States v. Alvarez,* 472 F.2d 111 (9th Cir. 1973).

■ The tip and the additional facts disclosed by the surveillance of the agents meet the probable cause test of *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The gloss of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968) requires no different result.

■ Appellant Moreno-Buelna on his own account challenges the sufficiency of the evidence supporting his conviction. This contention is without merit. There is evidence on the record from which the jury could conclude that Moreno-Buelna was one of the male individuals who loaded the pickup. Therefore, the evidence is sufficient to support his conviction.

The judgment is affirmed.

CHAMBERS, Circuit Judge (concurring):

I concur. I have no difficulty in finding probable cause for this search. The uncontroverted evidence, including the facts as stipulated by the parties, is that on the morning in question a tip was received from an informer, who had proved himself reliable, that "before too long" a blue-green Pontiac with California license number HGP 761, and containing marijuana, would enter the United States and proceed to a location in Calexico where the contraband would be "stashed." Early that afternoon, within a matter of hours, a Pontiac matching the description precisely, entered from Mexico and proceeded to a residence in Calexico. The ensuing events add up to a classic border-area stashing operation. The driver and her passenger parked the car in front of the residence and then left by other conveyance. A man from the residence moved the Pontiac into the driveway and two men began working in the rear seat area, making several trips into the house during the next ten minutes. An hour or so later a man drove the Pontiac back into Mexico.

Before dawn the next morning a blue pickup that had been parked in front was moved to the rear of the house without the aid of headlights. Two individuals began carrying objects from the house and placing them on the rear bed of the pickup, and this was done without the aid of house lights. They appeared to cover the objects with a tarp or other covering. Soon thereafter two men drove the pickup away from the house, heading west. Agent Goff testified that the two men who loaded the pickup were the same two men who drove away in it. This is also testimony that the pickup was under constant surveillance either from ground vehicles or from an airplane that was working with the ground vehicles.

In *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623, 629 (1975), dealing with searches at traffic checkpoints in the vicinity of the Mexican-American border, Justice Powell recognizes that "some of the factors" which can be relied on by officers in determining if they have probable cause to search a car are "the number of persons in a vehicle, the appearance and behavior of the driver and passengers, their inability to speak English, the responses they give to officers' questions, the nature of the vehicle, and indications that it may be heavily loaded." In addition, "the officers are entitled to draw reasonable inferences from these facts in light of their knowledge of the area and their prior experience with aliens and smugglers."

In this case we have the accurate tip from an informant of proven reliability, followed by activities at the Calexico

residence that corroborated the informer's information that the contraband would be "stashed" there. Add to this the "reasonable inferences . . . in light of [the officers'] knowledge of the area and their prior experience with aliens and smugglers" and there is enough to constitute probable cause for the search.

Moreover, this court has consistently held that officers may stop to make inquiries if there is "founded suspicion" for the stop, and "founded suspicion" may be less than probable cause. *United States v. Bugarin-Casas*, 484 F.2d 853, 854 (9th Cir. 1973). As already discussed, I have no difficulty finding probable cause. But even if probable cause were lacking, there was founded suspicion that justified the stop. Furthermore, it was stipulated that Agent Coleman, who approached the pickup after the stop, saw what appeared to be marijuana debris in plain view in the driver's compartment of the pickup. A search now being justified by probable cause, he lifted the coverings on the floor bed of the pickup and found the 180 pounds of marijuana. While the facts of the case suggest that the officers may have intended to search the pickup in any event, this fact, if true, would be irrelevant, as the search was supported by independent probable cause. *United States v. Bugarin-Casas, supra*, at 854, fn. 1.

The claim of insufficient evidence with respect to appellant Moreno-Buelna is without merit. The presumption of knowledge of the contraband which applies to the driver of a vehicle (in this case appellant Nava-Flores) does not apply to passengers such as appellant Moreno-Buelna. But there is enough in this record upon which the trier of fact could infer possession. Notably, there is the evidence that the two men who loaded the pickup were the same two men who drove away in it, and were the same two men who were in it when it was stopped and searched. See *United States v. Hood*, 493 F.2d 677 (9th Cir. 1974).

HUFSTEDLER, Circuit Judge (dissenting):

The convictions of both defendants should be reversed because there was no probable cause to search the Chevrolet. The majority says that information supplied by the informant furnished probable cause. The informant telephoned an agent of the Drug Enforcement Administration and told him that a blue-green Pontiac, California license HGP 761, would enter the United States at Calexico "before too long" and would "contain marijuana." If the informant gave the agent "any explanation, source or basis for this information, the government failed to introduce it." (*United States v. Hamilton* (9th Cir. 1974), 490 F.2d 598, 600.)

At the hearing on the motion to suppress, the agent who received the informant's phone call testified that the informant had supplied him with accurate information about contraband-laden vehicles on four to six occasions within the previous six years. This testimony was directed to the issue of the informant's reliability. However, "there is a 'two-pronged' test. It is necessary to make some showing of the validity of the conclusions made by the reliable informant." (*United States v. Hamilton, supra*, 490 F.2d at 600; *see Spinelli v. United States* (1969), 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637; *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723; *United States v. Davis* (3rd Cir. 1972), 461 F.2d 1026, 1033.) The second aspect of the test can be satisfied in any of three different ways: the informant can supply the government agent with the underlying basis of his conclusions; the agent can independently corroborate significant features of the informant's story; or the information supplied by the informant can be so detailed that it is inherently reliable. (*United States v. Hamilton, supra*, 490 F.2d at 600–01.) The record fails to support any of these alternatives.

The Government contends that the informant's tip was independently corrobo-

rated. I cannot agree. Certainly there is nothing criminal about driving a vehicle across the border to a residence in Calexico. No criminal activity was apparent at the Eighth Street residence. In the farming community of Calexico, early rising, turning on lights, loading "a large box or large bag" onto a pickup truck are commonplace events. These routine activities are not signals of unlawful activity and they are "not endowed with an aura of suspicion by virtue of the informer's tip." (*Spinelli v. United States, supra,* 393 U.S. at 418, 89 S.Ct. at 590; *see United States v. Larkin* (9th Cir. 1974), 510 F.2d 13 [observation of innocuous details not corroborative].) The Government cannot justify the search because an unverified tip turned out to be right. "It is hornbook law that ex post facto verification does not satisfy the Fourth Amendment." (*United States v. Hamilton, supra,* 490 F.2d at 601.)

Moreno-Buelna's conviction should be reversed on the additional ground that there is insufficient evidence connecting him with the underlying criminal activity. No agent saw him at the Eighth Street residence. No marijuana was found on his person. The sole evidence against him was the fact that he was a passenger in the Chevrolet when the Boarder Patrol stopped it and discovered the marijuana. The contraband was not visible to either the driver or the passenger. (*See United States v. Thomas* (9th Cir. 1971), 453 F.2d 141; *see also United States v. Flom* (9th Cir. 1972), 464 F.2d 554; *United States v. Holland* (1971), 144 U.S.App.D.C. 225, 445 F.2d 701; *Murray v. United States* (9th Cir. 1968), 403 F.2d 694.) The majority cites no evidence to support its statement that the jury could have concluded that Moreno-Buelna "was one of the male individuals who loaded the pickup." I can find nothing in the record from which the jury could have inferred that Moreno-Buelna was present when the vehicle was loaded, or that he had anything to do with loading the pickup. The inference rests on nothing

firmer than "utter speculation." (*United States v. Holland, supra,* 445 F.2d at 703.)

Accordingly, I would reverse both convictions.