UNITED STATES of America, Appellee,

v.

Eddie Roy GAY, Appellant.

UNITED STATES of America, Appellee,

v.

Sammie Jud DIXON, Appellant.

Nos. 76–2692, 76–2380.

United States Court of Appeals,
Ninth Circuit.

Jan. 19, 1978.

Rehearing Denied March 6, 1978.

Benjamin Wyatt, Jr. (argued), Beverly Hills, Cal., for appellant.

Mark H. Bonner, Asst. U. S. Atty. (argued), Los Angeles, Cal., for appellee.

Before BROWNING and ELY, Circuit Judges, and EAST,* District Judge.

ELY, Circuit Judge:

Appellants Dixon and Gay, together with co-defendant Lonzo L. Harris, not a party to these appeals, were charged in a three-count indictment with conspiring to violate and violating laws regulating Schedule I substances. 21 U.S.C. §§ 846, 841(a)(1), and 18 U.S.C. § 2. Count I charged all three defendants with conspiracy to possess heroin with intent to distribute it. Count II charged Dixon and Harris with possession of heroin with intent to distribute the substance. Count III charged Dixon and Harris with distribution of heroin and charged Gay with aiding and abetting in the distribution thereof. Following a joint jury trial, all three defendants were convicted as charged. Dixon and Gay now pursue this appeal, contending, *inter alia*, that their respective motions for a separate trial were improperly denied. We affirm.

I

On the morning of the day set for trial, Dixon, later joined by Gay, moved for a severance. Dixon's motion was founded upon the representation that, if a severance were granted, Harris would exculpate him. The motion was preceded by notice thereof, to which was attached a brief affidavit of Dixon's attorney.[1] As requested in the affidavit of Dixon's attorney, the court inquired of Harris' counsel whether his client intended to testify. Counsel responded that, if the cases were severed, Harris would indeed testify, but only if he were tried first. An extensive colloquy then ensued between the various counsel and the court in respect to Harris' conditional offer to testify. Pertinent portions of the colloquy are attached hereto as Appendix A. The court advised Harris' counsel that it was willing to impanel two juries, but, in that event, the separate trial of Dixon would precede the trial of Harris. The court reminded Harris' counsel that if, under those circumstances, Harris testified in behalf of Dixon, Harris would thereby forfeit his fifth amendment privilege as to his own later trial. Harris' counsel replied that he, understanding the court's point, would advise Harris not to testify unless, as proposed, the court scheduled his client's trial first. The court rejected the conditional offer to testify and denied the motion to sever.[2]

---

\* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

1. "1. I am an attorney at law licensed to practice before all the courts of the State of California and am the attorney for defendant, SAM JUD DIXON, in the within matter.

   "2. At the time of the arraignment of the defendants in this matter, the defendant, LONZO L. HARRIS, stated that he would be willing to testify on behalf of defendant, DIXON, and that Mr. DIXON was not involved in the narcotic transaction. Affiant would respectfully request this court to inquire from MR. HARRIS and/or his attorney if this is still his position in this matter."

   "Affiant says nothing further."

   The transcript of the arraignment of the defendants is not contained in the record before us, but we accept the representation concerning Harris' prior statement as correct, since no

question about it was ever raised. This makes the moving defendants' foundation broadly similar to that in *United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965) and *United States v. Shuford*, 454 F.2d 772 (4th Cir. 1971). Cases in our Circuit and elsewhere have announced strict requirements for affidavits supporting severance motions. Since neither the trial court nor the Government took exception to the affidavit as sufficient foundation, we accept it for purposes of this case only, the error, if any, being favorable to the defendants.

2. We do not assess the validity of the court's statement if correctly transcribed, that if Harris offered to testify at a co-defendant's prior trial, "he will or can be called by the Government at his own trial" (whatever was meant by "called") or, for that matter, upon any other remarks made by the judge in this colloquy. *See* Appendix A *infra*. Our function in this case is to review, within prescribed limits, what

When proceedings resumed in the afternoon session, counsel for Gay also moved for a severance based on anticipated exculpatory testimony from Harris. Discussion followed between the court and counsel for all three co-defendants, the substance of which paralleled the morning colloquy summarized above. The court denied both Gay's motion and Dixon's renewed motion to sever after confirmation from Harris' counsel that Harris would not testify unless tried prior to his co-defendants. *See* Appendix A *infra.*

## II

In *United States v. Rice,* 550 F.2d 1364, 1370 (5th Cir. 1977), the Fifth Circuit reviewed a severance problem similar to that before us now. There a motion for a severance, filed by a defendant named Massler, stated:

"In the instant case, Pedro Alvarez has stated, and he will so depose if requested, that if called at a separate trial where he will not need to exercise a Fifth Amendment privilege, he will and can give evidence that will exonerate Jerrold Massler completely. If tried jointly, Mr. Alvarez will, of course, not testify."

Because the motion did not indicate precisely to what Alvarez would testify, and because it was contingent upon Alvarez not being required to testify to anything which might have tended to incriminate him, the denial of the motion was held not to constitute error. The court, however, neither cited precedent nor elaborated on reasons in

support of its holding.[3] Nevertheless, we agree with the *Rice* court that a trial court may, in proper circumstances and in the exercise of its broad discretion in these matters, reject a severance motion based on a conditional offer to give exculpatory testimony. Our judgment follows from certain firmly established legal principles.

Preliminarily, we note that a criminal defendant's Fifth Amendment privilege against self-incrimination is composed of two distinct aspects: first, the privilege not to be summoned to the witness stand, and, second, the privilege not to answer questions to which the answers might be incriminating. For good or ill, the settled law of our Circuit is that in a joint trial a defendant may not call a co-defendant to the witness stand. *United States v. Roberts,* 503 F.2d 598 (9th Cir. 1974), *cert. denied,* 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975); *United States v. McKinney,* 453 F.2d 1221 (9th Cir. 1972); *United States v. Beye,* 445 F.2d 1037 (9th Cir. 1971), *following Bowles v. United States,* 142 U.S.App. D.C. 26, 439 F.2d 536 (1970) (en banc), *cert. denied,* 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971). The Supreme Court apparently has never specifically issued an opinion on the point. *But cf. Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The same rule may apply to any witness who has indicated his intention to invoke the Fifth Amendment, *Bowles v. United States, supra,* but our court's rule appears to be *contra. United States v. Bautista,* 509 F.2d 675, 678 (9th Cir. 1975), *cert. denied, Monsivais v. United States,* 421

---

the court did, not what it said. We expressly refrain from ruling broadly on what Harris' position *vis-a-vis* the Fifth Amendment would have been if he had testified in a prior trial of a co-defendant in the absence of such an express waiver. Nor do we rule on the effect of such a waiver if a retraction were attempted.

**3.** A co-defendant's conditional offer to testify only if nine counts against him were dismissed was listed among grounds for denying a severance without separate discussion in *United States v. Larios-Montes,* 500 F.2d 941 (9th Cir. 1974), *cert. denied,* 422 U.S. 1057, 95 S.Ct. 2681, 45 L.Ed.2d 709 (1975). In a sense, the present case is the converse of *United States v. Frazier,* 394 F.2d 258 (4th Cir. 1968), *cert. de-*

*nied,* 393 U.S. 984, 89 S.Ct. 457, 21 L.Ed.2d 445 (1968). There a defendant complained of the refusal to grant a severance on the ground that a co-defendant, if freed of Fifth Amendment problems presented by a joint trial, might have given exculpatory evidence. The court, in affirming, observed that the Fifth Amendment problems would remain unless the moving defendant "might be lucky enough" to draw a trial date subsequent to the exculpating witness and the latter were convicted. "On such gambles," the court said, "proper criminal procedure, for severance, cannot be based." *Id.* at 261. In the present case, Harris was unwilling to gamble so, demanding assurance that he be tried first.

U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *cf. Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Although these rules arguably may be viewed as raising a serious conflict between the Fifth and Sixth Amendments, the uniform response to this constitutional tension has been that, irrespective of the Sixth Amendment, a defendant has no absolute right to elicit testimony from any witness, co-defendant or not, whom he may desire. Indeed, the witness may be unavailable to him for many reasons, *e. g.,* death, incapacity, presence outside the range of legal process, and commonly, the refusal of the witness to testify pursuant to a claim of privilege, not the least important of which arises from the Fifth Amendment. *Royal v. State of Maryland,* 529 F.2d 1280 (4th Cir. 1976); *United States v. Murphy,* 413 F.2d 1129 (6th Cir. 1969), *cert. denied,* 396 U.S. 896, 90 S.Ct. 195, 24 L.Ed.2d 174 (1969); *Myers v. Frye,* 401 F.2d 18 (7th Cir. 1968).

■ Moreover, co-defendants jointly charged are, *prima facie,* to be jointly tried. *Fed.R.Crim.P.* 8. The ordering of separate trials requires unusual circumstances and the power to do so rests within the broad discretion of the District Court as an aspect of its inherent right and duty to manage its own calendar. *Fed.R.Crim.P.* 14; *Opper v. United States,* 384 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954) (a severance is not required until a joint trial will be "manifestly prejudicial."); *United States v. Kaplan,* 554 F.2d 958, 965–67 (9th Cir. 1977); *United States v. Donaway,* 447 F.2d 940, 943 (9th Cir. 1971) (citing numerous cases).[4] The "great mass" of cases refuse to grant a severance despite the anticipated exculpatory testimony of a co-defendant. *See* 1 C. White, *Federal Practice and Procedure: Criminal* § 227, n. 13 and cases cited therein. The same author states: "Motions for severance so that a defendant may be able to call a codefendant to the stand are usually denied." *Id.* § 225.

The Notes of the Advisory Committee on Rule 14, as originally promulgated, state

that a "severance . . . is entirely in the discretion of the [trial] court . . ." *Anno., Fed.R.Crim.P.* 14, 18 U.S.C.A. The bases for reversal have been variously described as "Abuse," "clear prejudice," "clear and affirmative showing of abuse," "clear showing of prejudice," and "positive showing of prejudice," *see United States v. Olson,* 504 F.2d 1222, 1224 (9th Cir. 1974); *United States v. Pietras,* 501 F.2d 182, 185 (8th Cir. 1974), *cert. denied,* 419 U.S. 1071, 95 S.Ct. 660, 42 L.Ed.2d 668 (1974); *United States v. Jenkins,* 496 F.2d 57, 68 (2d Cir. 1974), *cert. denied, Hall v. United States,* 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975); *United States v. Bryant,* 490 F.2d 1372, 1379 (5th Cir. 1974), *cert. denied, Impson v. United States,* 419 U.S. 832, 95 S.Ct. 57, 42 L.Ed.2d 58 (1975); *Kane v. United States,* 431 F.2d 172, 176 (8th Cir. 1970). Our own court has written:

> "While Rule 14, Fed.R.Crim.P., permits a trial court to grant a severance where a joint trial would be prejudicial to a defendant, the decision to grant the severance is within the discretion of the court and ordinarily not subject to review."

*Daut v. United States,* 405 F.2d 312, 314 (9th Cir. 1968), *cert. denied,* 402 U.S. 945, 91 S.Ct. 1624, 29 L.Ed.2d 114 (1971). Further, we have specified:

> "The trial judge has great discretion in ruling on Rule 14 motions, and review on appeal is limited to whether '. . . the joint trial [was] so prejudicial . . as to require the exercise of that discretion in only one way, by ordering a separate trial . . .' *Parker v. United States,* 404 F.2d 1193, 1194 (9th Cir.), *cert. denied,* 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782 (1969)."

*United States v. Ragghianti,* 527 F.2d 586, 587 (9th Cir. 1975).

### III

■ Mindful of the aforementioned principles, we cannot say in these appeals that the trial court abused its discretion in refusing to accede to Harris' conditional offer

---

4. *See also* numerous cases cited *infra.* The well-nigh insoluble problems presented by the

interaction of Rules 8 and 14 are discussed in *Comment,* 74 *Yale L.J.* 551 (1965).

to present exculpatory testimony. The manifest purpose of the trial court was to insure that severance not be employed so as to grant to any of the defendants, including Harris, any benefits that they would not have enjoyed but for the joint indictment. The fairness of the court's intentions may be tested hypothetically. If there had not been a joint indictment, but rather separate indictments of each of the co-defendants, then several consequences might have followed. In the regular management of its calendar the court might well have scheduled the trial of Harris first. In that event, if Harris had voluntarily testified, then he either would have waived his privilege under the Fifth Amendment, or he would have been required to invoke it in the presence of the jury. Consequently, any testimony he did choose to give would have been admissible at a subsequent trial of his co-defendants.[5]

If, alternatively, the other defendants had been tried first, again assuming separate indictments, they could, under the rule in this Circuit, have called Harris to the stand and compelled him to invoke the Fifth Amendment as any other third party witness could have been so compelled. Or, if Harris chose not to invoke the privilege, his testimony could have been introduced by the Government in his own subsequent trial. Of course, Dixon and Gay could have moved to delay their trial until Harris had been tried, but we know of no authority under which a trial court would be compelled to grant such a request.

Thus, by refusing to abide by Harris' conditional offer to testify at a separate trial, the trial court simply refused to allow any of the defendants to, as the court put it, "play games." *See* Appendix A. In effect, the court ruled that even if a severance were granted, the separate trials would be scheduled and conducted under the same rules and with the same consequences as if the defendants had been separately indicted. We decline to hold that this was an unreasonable view for the trial court to take, much less that the denial of the severance motions constituted such an abuse of discretion as to warrant reversal.[6]

---

5. While the law is somewhat confused on this issue, this proposition is apparently correct. In the leading case, *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), all members of the Court assumed that, absent the erroneous admission of illegal evidence that virtually compelled the defendant to testify at a previous trial, his prior testimony would have been admissible. *See also United States v. Houp*, 462 F.2d 1338 (8th Cir.), *cert. denied*, 409 U.S. 1011, 93 S.Ct. 456, 34 L.Ed.2d 305 (1972). *Cf. United States v. Snow*, 521 F.2d 730, 734, n.2 (9th Cir. 1975), *cert. denied*, 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1975). The confusion is compounded by the promulgation of Fed.R.Evid. 804(b)(3). ("A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.")

6. Appellants' reliance upon *United States v. Vigil*, 561 F.2d 1316 (9th Cir. 1977), is misplaced. In that case, Baca, who had been jointly indicted with Vigil for narcotics offenses, moved to have his trial severed on the ground that Vigil would give exculpatory testimony if called at a separate trial. The trial court denied the motion for severance. On appeal, this court found that denial to have been an abuse of discretion. We are not persuaded that the court in *Vigil* reached the question now before us. There the court was concerned whether or not a severance should have been granted at all. Here, the trial court was willing to grant a severance, but was confronted with a further demand by the putative co-defendant witness that his trial be scheduled first. Consequently, unlike *Vigil*, where the offer to testify was unconditional, we are faced with an offer to testify expressly conditioned on a demand that the order of the trials be designated in a particular manner. Moreover, in *Vigil* the prejudice of a joint trial was manifest. The appellants here apparently ignored other potentially exculpatory evidence. The facts in the present case more closely resemble those of *United States v. Rice, supra*, where the court affirmed the denial of a motion for severance which was based on a similar conditional offer by a co-defendant to testify.

We put aside a suggestion that may be implicit in our decision, as it has been made explicit in a similar case. This is that a severed co-defendant, following his own trial, may be more inclined to "throw a bone," *United States v. Frazier*, 394 F.2d 258, 261 (4th Cir. 1968), *cert. denied*, 393 U.S. 984, 89 S.Ct. 457, 21 L.Ed.2d 445 (1968), to his co-defendants once his own case has been disposed of and he has nothing to lose by testifying. We are assuming for present purposes that Harris' testimony, in any stage of proceedings, would have been truthful.

■ In support of Dixon's motion for severance, counsel represented to the court that he had a document from the files of the United States Attorney recording an interview with an informant, in which the informant allegedly reported that "Dixon told Harris that he didn't want anything to do with the deal. That it was Lonzo's." At this point, the trial judge observed that he assumed the informant would be available to testify. No one contradicted or corrected this assumption. *See* Appendix A *infra.* Yet counsel for neither Dixon nor Gay sought to call the informant despite the unavailability of Harris' testimony.[7] *See United States v. Kaplan, supra,* at 965–67. The trial court was entitled to factor the existence of the informant into his evaluation of the extent to which Dixon and Gay might be prejudiced by the absence of Harris' testimony. *See United States v. Rice, supra,* 550 F.2d, at 1369.

■ We mean in no way suggest that trial courts should, in all cases, reject an offer of a co-defendant witness to provide exculpatory testimony conditioned on a separate trial prior to that of the movant. Indeed, there is no question but that the purpose of a severance is more fully implemented when the co-defendant witness is tried first, and consequently is not deterred from providing exculpatory testimony by the prospect of forfeiting his Fifth Amendment privilege.[8] Conversely, in circumstances wherein the trial court would abuse its discretion by not granting a severance, it might well be error for the court to grant a severance in name only while still requiring that the co-defendant witness offering exculpatory testimony be tried after the movant. Granting a severance in this form would be tantamount to denying the motion to sever. Such, however, is not the case

here. When, as here, the trial court acts appropriately within its discretion in denying the motion altogether, we cannot say that it was error to require, as a condition for granting the severance, that the movant's trial be conducted in advance of that of a co-defendant witness offering conditionally to provide exculpatory testimony. We are not persuaded that the appellants were subjected to substantial injustice by the challenged ruling of the trial court.

There is no merit in the appellants' contention that an unlawful search and seizure occurred. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

The judgments of conviction must be, and they hereby are,

AFFIRMED.

## APPENDIX A

THE COURT: Have you read the motion, counsel?

MR. LOGAN [Attorney for Harris]: I have, your Honor.

THE COURT: Is your client going to testify?

MR. LOGAN: I would represent to the Court, your Honor, that if Mr. Harris—if the cases are severed and Mr. Harris' case is tried first, that Mr. Harris would testify.

THE COURT: No. Mr. Dixon's case would be tried first. And you understand that if they are severed, that Mr. Harris will have to waive his Fifth Amendment privilege in its totality, so that if he does not testify he can be called by the Government as a witness in that case.

MR. LOGAN: I understand that, your Honor. Mr. Harris has indicated to me his desire to do so.

7. We mention the existence of the informant only to indicate that other potentially exculpatory evidence may have been available.

8. *See United States v. Echeles, supra,* 352 F.2d at 898, wherein the Government contended, *inter alia,* that the defendant's position in support of his motion to sever indulged in the speculative assumption that the anticipated co-defendant witness would be tried before the

defendant. To this argument the court replied: "As for . . . [this] 'assumption' we do not feel it would have been egregious had the trial judge, after granting the motion for separate trial, also directed the Government to proceed first with the case against . . . [the co-defendant witness]." *See also United States v. Frazier, supra* note 3.

THE COURT: Mr. Dixon will be tried first.

MR. LOGAN: Your Honor, only if Mr. Harris's case would be tried first.

THE COURT: There is nothing that requires that. If he is going to testify, he is going to testify on the basis of the case that goes first.

MR. LOGAN: I understand that, your Honor. It would be my advice to Mr. Harris, however, not to testify in that case.

MR. SHERMAN [Attorney for Dixon]: Your Honor, in support of the motion I also would like to have marked as an exhibit a letter from the United States Attorney's office, from Mr. Handzlik, dated March 16, 1976, in which apparently the informant in this case, in a 302—excuse me—in a statement to the prosecutor has indicated, "Dixon told Harris that he didn't want anything to do with the deal. That it was Lonzo's." In other words, from their own—they supplied that to me as Brady information from their own files. The informant had told the Government that Dixon told the informant prior to him knowing he was working for the police that he wanted nothing to do with the transaction, that it was Lonzo's, which presumably means Mr. Harris.

THE COURT: I take it that the informant will be available to testify.

MR. SHERMAN: I would like to have that submitted in support of the motion to sever to show that it is not only Mr. Harris who would be making the statement that could exonerate Mr. Dixon, but from the Government's own files there is the same information.

\*    \*    \*    \*    \*    \*

MR. HANDZLIK [Attorney for the Government]: Your Honor, in regard to the motion to sever the record also indicates that subsequent to his arrest and after being properly advised of his rights, Mr. Harris stated that he had been involved in a narcotics transaction along with Gay and Dix-

on. And Mr. Harris further stated that he had involved Mr. Dixon in the narcotics transaction, but did not relate how. Thank you.

THE COURT: The motion to sever in that sense is denied.

\*    \*    \*    \*    \*    \*

MR. LOGAN: I understand. I would make the representation that Mr. Harris wishes at this time, with my consent, to testify on behalf of Mr. Dixon before the other jury if he is not at that time giving up Fifth Amendment rights to his own jury.

THE COURT: No, sir, he is going to give up his Fifth Amendment rights in terms of the testimony for Mr. Dixon, if that is what he is representing. If he does not testify in the trial of Mr. Dixon, which will probably be completed first, then he will or can be called by the Government.

MR. LOGAN: If it means he is going to be forced to give up his Fifth Amendment rights I will have to forego the procedure and advise him not to testify.

THE COURT: He is giving up his Fifth Amendment rights when he says he is going to testify for a codefendant. There is nothing that permits him to sever that.

MR. LOGAN: I would object to the procedure and ask him not to testify in that regard.

THE COURT: Then there will be a single trial as to all defendants.

\*    \*    \*    \*    \*    \*

MR. SHERMAN: Your Honor, I would object also to on behalf of Mr. Dixon to putting Mr. Harris in the position of giving up his Fifth Amendment rights in that regard.

THE COURT: Mr. Dixon has no standing to do that.

MR. SHERMAN: I think it is a denial of his Sixth Amendment rights, right to confrontation [sic \*].

THE COURT: No, it is not.

---

\* Counsel apparently confused, as courts sometimes do, the separate Sixth Amendment rights "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor." *See DeLuna v. United States*, 308 F.2d 140, 143 (5th Cir. 1962); *United States v. Beye*, 445 F.2d 1037, 1044, n.8 (9th Cir. 1971) (dissenting opinion).

MR. SHERMAN: Well, that is the Court's ruling. For the record, I would object to the procedure on the grounds it denies him his Sixth Amendment rights to confrontation.

THE COURT: All right.

MR. SHERMAN: And also his Fifth Amendment rights.

[Following a continuance, the proceedings resumed that afternoon with Gay's attorney present, and the following colloquy occurred:]

MR. ISAACMAN [Attorney for Gay]: Your Honor, I am aware Mr. Sherman filed a motion for severance in this case in behalf of his client and it was ruled on this morning.

I have been informed today that Mr. Harris would testify at a separate trial, separate and subsequent trial on behalf of Mr. Gay, and he would testify to exculpatory information. He would testify that Mr. Gay was not involved in a narcotics transaction, was not informed there was going to be a transaction and took no part in it.

Accordingly, I would move on behalf of Mr. Gay for a separate and subsequent trial to that of Mr. Harris.

THE COURT: Mr. Harris has already been given the situation that the trial of a severed defendant is going first or jointly, presented to the jury first.

MR. ISAACMAN: Would go first?

THE COURT: That is right. We are not playing games here, gentlemen, so please don't misunderstand me.

MR. ISAACMAN: Your Honor, as I understand, Mr. Harris's concern is he doesn't want to give up his Fifth Amendment right for the purposes—

THE COURT: I recognize that, counsel, but he has to do it. If he wants to testify for somebody he has got to give up his Fifth Amendment rights. He can't play games.

MR. ISAACMAN: May I have a moment to confer with Mr. Harris's counsel?

THE COURT: Either he is going to testify or he is not. If he testifies, he is going to give up his Fifth Amendment rights. He has already asked about that and he has answered no as far as Mr. Dixon is concerned.

MR. ISAACMAN: I understand that answer is "No" with regard to Mr. Gay as well, your Honor.

THE COURT: All right.

MR. SHERMAN: Your Honor, may I just inquire of the Court as to why, if there is a severance, why would it be necessary for Mr. Harris to have to incriminate himself at his own trial if he wishes to testify on behalf of the codefendant?

THE COURT: Counsel, I am not going to answer any questions for you.

MR. SHERMAN: Don't you think it denies—

THE COURT: Just a moment, Mr. Sherman. I am not going to answer any questions for you.

MR. SHERMAN: Well, then, I would move what the Court has outlined denies Mr. Dixon—

THE COURT: You have already stated that on the record, Mr. Sherman. You do not have to state that again. You have already said it on the record.

MR. SHERMAN: All right.

[At the conclusion of the evidence, the matter was further referred to as follows:]

MR. SHERMAN: It was my intention to call Mr. Harris as a witness for Mr. Dixon. His attorney, however, has told me that he would exercise his rights of the Fifth Amendment. I do not feel it would be appropriate to call him in the presence of the jury, but I want the record to reflect that I would want to call him as a witness.

MR. LOGAN: It would be my intention, your Honor, to ask him not to testify.

MR. ISAACMAN: I would also, your Honor, call Mr. Harris for Mr. Gay.

THE COURT: All right.

MR. LOGAN: We would have the same objection.

THE COURT: All right.

MR. SHERMAN: We would renew the motion for severance so I might call Mr. Harris as a witness.

THE COURT: The motion is denied.