UNITED STATES of America,
Plaintiff-Appellee,

v.

Pablo TREJO–ZAMBRANO,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Jesus FIERRO–SOZA,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank FIERRO–SOZA,
Defendant-Appellant.

Nos. 77–2990, 77–3024 and 77–3182.

United States Court of Appeals,
Ninth Circuit.

May 26, 1978.

Rehearing Denied in No. 77–2990
July 21, 1978.

Rehearing and Rehearing En Banc Denied
in No. 77–3024 Aug. 18, 1978.

John J. Cleary (argued), Fed. Defenders of San Diego, Inc., San Diego, Cal., David P. Curnow (argued), San Diego, Cal., Anthony S. Deutsch, San Diego, Cal., for defendant-appellant.

Stephen W. Peterson, Asst. U. S. Atty. (on the brief), Terry J. Knoepp, U. S. Atty., Stephen W. Peterson, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before TRASK and KENNEDY, Circuit Judges, and SOLOMON,[*] District Judge.

SOLOMON, District Judge.

Pablo Trejo-Zambrano and Jesus and Frank Fierro-Soza, the appellants, were each convicted of possession of marijuana with intent to distribute and of conspiracy. We affirm.

Appellants were jointly indicted. They filed motions to suppress the evidence (79 pounds of marijuana found in the "load" car driven by Jesus Fierro-Soza) asserting that the DEA agents: (1) did not have probable cause to search the load car and (2) failed to obtain a warrant for the search.

After a hearing, the trial court denied the motions. The Fierro-Soza brothers agreed to a court trial. They stipulated that the court could consider the evidence adduced at the suppression hearing to determine their guilt or innocence, but they preserved for appeal their objections to the admissibility of the evidence. The court found both guilty.

Pablo Trejo-Zambrano (Trejo) was tried by a jury. The jury found him guilty. With the Fierro-Soza brothers, Trejo contends that the trial court erred when it refused to suppress the evidence. In addition, Trejo contends the trial court erred when it: (1) refused to compel Jesus to testify on behalf of Trejo, (2) excluded from evidence Jesus' incriminating affidavit, (3) permitted the Government to impeach Trejo with a felony conviction that had been set aside, and (4) failed to disclose the identity of the Government informant.

## I.

Early one morning, a confidential informant called DEA Agent Harr in San Diego. The informant had given Harr accurate information on two earlier occasions and was regarded by Harr as reliable. Now the informant told Harr that a '61 Pontiac with a Mexican license plate was parked in an alley next to the house of Antonio Verdugo-Pinuelas. The informant reported that the Pontiac contained narcotics, possibly marijuana, and that Verdugo would drive it to a Safeway Store parking lot where he would turn it over to someone else.

Harr alerted other DEA agents. A few hours later, the agents saw Verdugo get into the Pontiac described by the informant and drive it to a Safeway Store parking lot.

When Verdugo arrived, the appellants, Frank and Jesus Fierro-Soza and Trejo, were at the parking lot with a black Buick Riviera. Verdugo parked, got out of the Pontiac, and talked with Trejo and Jesus.

Shortly thereafter, Jesus got into the Pontiac and drove it away. Agents Harr and Aros followed and stopped him about five minutes later.

They ordered him to get out of the car. They then advised him of his rights, frisked him, and asked for permission to search the car. When he refused, the agents took the Pontiac to a nearby Texaco service station, where they hoisted it on a lift. They checked the undercarriage, and when they did not find any contraband, they removed the headlights, kick-plates, door panels, seats and carpets. Two hours after they started to disassemble the car, they found 79 pounds of marijuana in a compartment under the front seat.

Earlier, when Jesus left the parking lot in the Pontiac, Trejo and Frank drove off in the Buick. A DEA agent approached them when they stopped at a gas station. The agent arrested Trejo because he had an altered immigration card. Later, when marijuana was found in the Pontiac, the agents arrested Frank.

## II.

All of the appellants contend that the search of the Pontiac was illegal because the DEA agents lacked probable cause and because they failed to obtain a search warrant.

---

[*] Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

From the time Verdugo exchanged cars with Jesus, the DEA agents had probable cause. An informant's tip supplies probable cause if the informant is known to be reliable by the agent, and the agent subsequently obtains corroboration of significant features of the tip before he acts on it. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. Morena-Buelna*, 524 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410 (1975). Here the informant was reliable and the reliability of his tip was confirmed when Verdugo drove to the Safeway Store as the informant predicted he would.

Appellants contend that the DEA agents needed a warrant to search the Pontiac once they took it to the service station.

The existence of circumstances justifying a warrantless search of an automobile is to be determined as of the time of the seizure rather than as of the time of the search. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). All that is required to stop and search an automobile on a road is probable cause to believe it contains contraband. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Abascal*, 564 F.2d 821, 828 (9th Cir. 1977). Because the moving vehicle exception permitted the DEA agents to conduct a warrantless search on the road, *Chambers* permitted them to take the Pontiac to a service station where they could conduct the search thoroughly, with more ease and with greater safety.

Appellants' reliance on *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1970) is misplaced. *Coolidge* invalidated a warrantless search of an empty automobile which was parked in the driveway of the owner. The search occurred long after the police had cause, and when they had good reason to believe the automobile would not be removed.

Appellants' reliance on *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), is also misplaced. *Chadwick* ruled illegal the warrantless search of a footlocker which was seized by narcotics agents who had probable cause to believe the footlocker contained contraband. When the agents opened it, it was safely in their exclusive possession in the federal building. Appellants contend that *Chadwick* overruled *Chambers v. Maroney, supra.* There is no merit to this contention. The Court distinguished the search of the footlocker from automobile searches with the explanation that a greater expectation of privacy surrounds luggage than automobiles. Automobiles rarely serve as the repository of personal effects, have their contents partially exposed to the public, and are subject to extensive regulation and periodic inspection.

The trial court properly denied the motions to suppress.

Because the marijuana was admissible, the evidence, which included the testimony of the DEA agents and of Verdugo (who pleaded guilty), was sufficient to sustain the convictions.

### III.

### (A)

Trejo asserts that the trial court erred when it (1) refused to compel Jesus to testify on behalf of Trejo and (2) excluded from evidence an incriminating affidavit executed by Jesus.

After appellants were jointly indicted, Frank Fierro-Soza moved for a severance. In support of his motion, he attached an affidavit from his brother Jesus, who said that he knew the Pontiac contained marijuana but his brother Frank did not. Trejo was not mentioned in the affidavit. Jesus also stated in the affidavit that he would testify to Frank's ignorance only if Frank's severance motion were granted. He also said that he did not believe that his incriminating remarks in the affidavit could be used against him.[1] The court denied the motion.

---

1. He apparently relied on *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), which held that the statements made by an accused at a pretrial suppression

At Trejo's jury trial, which was after the Fierro-Soza brothers were convicted, but before they were sentenced, Trejo called Jesus as a defense witness. Jesus refused to testify, asserting his Fifth Amendment privilege. The court refused to compel Jesus to testify for Trejo. The court also refused to let Trejo introduce in evidence Jesus's incriminating affidavit.

The Sixth Amendment right of an accused to compulsory process to secure the attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege. *United States v. Gay*, 567 F.2d 916 (9th Cir. 1978). Nor is an accused entitled to compel a prosecutor to grant immunity to a potential defense witness to get him to testify. *United States v. Alessio*, 528 F.2d 1079, 1081 (9th Cir.), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976).

Jesus had been convicted (although not sentenced) when he asserted his Fifth Amendment privilege. Trejo did not argue the effect of the conviction on the asserted privilege, and from the record one cannot say that Jesus did not legitimately fear incurring additional criminal liability from any testimony he could give on behalf of Trejo. *United States v. Johnson*, 488 F.2d 1206, 1209–1210 (1st Cir. 1973); *United States v. Domenech*, 476 F.2d 1229 (2d Cir.), *cert. denied*, 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973). Nor did Jesus waive his right to refuse to give self-incriminating testimony when he executed the incriminating affidavit in support of Frank's severance motion. A waiver of the Fifth Amendment privilege at one stage of a proceeding is not a waiver of that right for other stages. *Jeffries v. United States*, 215 F.2d 225 (9th Cir. 1954); see *United States v. Johnson, supra*, at 1210.

Jesus's affidavit was properly rejected. It was irrelevant. It did nothing to exculpate Trejo. In addition, the statements were inadmissible hearsay. Rule 804(b)(3), Federal Rules of Evidence, prohibits the admission of a hearsay statement exculpating the accused, unless the statement was clearly against the penal interest of the declarant and is supported by corroborating circumstances indicating its trustworthiness. *United States v. Oropeza*, 564 F.2d 316 (9th Cir. 1977). Here the affiant executed the affidavit on the assumption it could not be used against him. If the affidavit was not privileged and was therefore technically a statement against Jesus's penal interest, it was nevertheless highly untrustworthy.

(B)

Trejo next contends that he is entitled to a new trial because the prosecutor improperly impeached him with a prior conviction that had been set aside.

Trejo concedes that the Government acted in good faith and that his defense counsel had read the docket sheet in the Clerk's Office which contained an entry that the conviction had been set aside. Apparently defense counsel overlooked this entry, which showed that Trejo, after a probationary period, received a certificate vacating the conviction under 18 U.S.C. § 5021(b). This made the prior conviction inadmissible for impeachment purposes under Fed.R. Evid. 609(c). 3 Weinstein's Evidence ¶ 609(4) at 609–83.

After defense counsel had read the docket sheet and before Trejo took the stand, the trial court held a hearing on the admissibility of the prior conviction. Defense counsel then raised the possibility that the conviction may have been set aside. The prosecutor stated that his copy of Trejo's record did not show that Trejo's conviction had been set aside, but offered to return to his office and re-examine his copy of the record. He also said that he was not sure whether the prior conviction was for possession or smuggling of marijuana. The trial

hearing in support of his Fourth Amendment contentions cannot be used against him at trial as evidence in chief. For the purposes of this appeal, it is unnecessary to determine whether Jesus' reliance on *Simmons* was correct.

court directed the prosecutor to verify the nature of the conviction from either a court record, some other relevant document, or from defense counsel. The trial court also directed the prosecutor to supply his copy of Trejo's record to defense counsel during the recess. Defense counsel then stated that he intended to call Trejo and would ask him about his prior conviction on direct without waiving his objection to the admissibility of the conviction.

The trial court ruled that the prior conviction was admissible. After a ten minute recess, defense counsel called Trejo to testify and on direct asked Trejo about his conviction.

The jury convicted Trejo. Later, defense counsel visited the Federal Probation Office, where he was told that the Youth Corrections Act conviction had been set aside. Defense counsel returned to the Clerk's Office and when he again read the docket sheet he saw what he had apparently overlooked before—that the earlier conviction had been set aside.

It is admitted that the prosecutor's copy of Trejo's record did not show that the conviction had been set aside.

On appeal, Trejo argues that Rule 609, Federal Rules of Evidence, imposed on the Government a duty to discover whether a prior conviction was vacated. But Rule 609 addresses itself to the Government's burden of showing that the relevance of a prior conviction outweighs its prejudicial effect, and not to the burden of discovering the history following conviction.

The rule which defines this responsibility is Rule 16(a)(1)(B), Federal Rules of Criminal Procedure. It provides:

". . . Upon request of the defendant, the government shall furnish to the defendant such copy of his prior criminal

record, if any, as is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government."

"Government" as used in this rule refers to the office of the prosecutor and related executive agencies, and does not refer to offices of the court, such as the Clerk's Office or the Probation Office. *United States v. Trevino*, 556 F.2d 1265, 1270–1273 (5th Cir.), *rehearing en banc denied*, 562 F.2d 1258 (5 Cir. 1977). The legislative history of Rule 16(a)(1)(B), which was enacted as part of the Federal Rules of Criminal Procedure Amendments Act of 1975,[2] confirms the Fifth Circuit's interpretation of the term "government", and also states that the prosecutor ordinarily discharges his duty under Rule 16(a)(1)(B) by supplying the accused with a copy of his F.B.I. rap sheet.[3]

██ Here the prosecutor fulfilled his duty of discovery and disclosure by revealing the record of the prior conviction and the F.B.I. rap sheet. Defense counsel's misreading of the docket sheet in the Court Clerk's office did not shift the responsibility of discovering that the Youth Corrections Act conviction had been vacated. On these facts, any other result would create too great a danger of manufactured error.

██ Trejo also argues that the trial court abused its discretion by admitting the prior felony conviction for impeachment purposes. Trejo contends that the prejudicial effect of this evidence greatly outweighed its relevance to the issue of his credibility. The trial court, after a hearing, concluded that a conviction for felonious drug trafficking warranted the use of the conviction for impeachment. The court did

---

**2.** Pub.L. 94–64, 89 Stat. 370.

**3.** H.Rep. No. 94–247, 94th Cong., 1st Sess. 12, 15, *reprinted in* (1975) U.S.Code Cong. & Admin.News, pp. 684, 687. Senator McClellan, a sponsor of the Senate bill and a member of the Conference committee, gave this explanation of the Government's duty of disclosure under Rule 16(a)(1)(B):

". . . there is no intent to burden the Government with any substantial new administrative procedure and *the Government's obligation under this Rule should be deemed met by obtaining a copy of the FBI 'rap' sheet.*" 121 Cong.Rec. 23323 (1975) (emphasis added).

not abuse its discretion. *United States v. Ortiz*, 553 F.2d 782 (2d Cir. 1977), *cert. denied*, 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183.

#### (C)

Finally, Trejo contends that the trial court should have disclosed the identity of the DEA informant. Trejo speculates that Verdugo was the informant. Trejo argues that if Verdugo was the informant, then disclosure of the fact would have permitted Trejo to impeach Verdugo. Verdugo testified against Trejo and denied that he was the informant.

 The trial court conducted an *in camera* hearing and concluded that revealing the identity of the informant would not be relevant or helpful. The record of the hearing supports this conclusion. Trejo, to compel the disclosure of the identity of the informant, must do more than speculate that disclosure will prove helpful. *United States v. Marshall*, 532 F.2d 1279 (9th Cir. 1976).

The convictions of appellants are affirmed.

KENNEDY, Circuit Judge, concurring in part and dissenting in part:

I concur in the court's opinion as to all matters except its conclusion that the Government had no responsibility to advise the court that appellant Trejo-Zambrano's prior conviction as a youth offender had been set aside pursuant to 18 U.S.C. § 5021(b).

Federal Rule of Evidence 609(c) provides that: "Evidence of a conviction is not admissible [for impeachment purposes] if (1) the conviction has been the subject of a . . . certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year . . . ." The Federal Youth Corrections Act puts prosecution and defense alike on notice that a conviction is automatically set aside where one who has been sentenced as a youth offender is unconditionally discharged before expiration of the maximum sentence imposed on him or before expiration of the maximum period of probation initially fixed by the court. 18 U.S.C. § 5021.

Moreover, the record clearly indicates that the prosecutor was fully aware of the nature of the offense and of the possibility that a certificate of discharge had been issued:

> Mr. Peterson [Prosecutor]: . . . [The conviction is] being offered for impeachment and it's well within the ten-year rule, and it's for the smuggling of marijuana, and it's clearly admissible under the rules. I do not have in my file a—any indication that there was a certificate of discharge.

Reporter's Transcript, vol. IV, at 429. Defense counsel objected to introduction of the prior conviction and indicated his uncertainty as to whether or not it had been expunged:

> Mr. Cleary [Defense Counsel]: . . . So my problem is, I don't have the file to indicate to the Court whether or not such certificate was obtained and I'm fearful that a miscarriage of justice would occur if we discovered such a thing after the time.

*Id.* at 428.

On these facts I would conclude that it was error to admit evidence of a Federal Youth Corrections Act conviction where the Government has not shown that the conviction had not been expunged. The majority cites no case to the contrary, and the legislative history of Federal Rule of Criminal Procedure 16(a)(1)(B) states only that the Government *ordinarily* discharges its duty by furnishing defense counsel with the docket sheet. The specific circumstance presented here, where the defense has explicitly objected to admission of what the prosecution knows to be a juvenile conviction, is not necessarily the ordinary situation referred to by the legislature. *Cf. United States v. Cox*, 536 F.2d 65, 70 n.11 (5th Cir. 1976) (in order properly to evi-

dence defendant's conviction, Government should have obtained a certified copy of the judgment).