Terrance MACK, Petitioner–Appellant,

v.

Howard A. PETERS, III, Director, Department of Corrections, State of Illinois, Respondent–Appellee.

No. 94–3849.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 23, 1995.

Decided April 3, 1996.

James N. Perlman (argued), Office of Cook County Public Defender, Chicago, IL, for petitioner-appellant.

Nancy L. Grauer, Steven Zick (argued), Office of Atty. Gen., Criminal Appeals Div., Chicago, IL, for respondent-appellee.

Before CUMMINGS, RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

Convicted murderer Terrance Mack seeks a writ of habeas corpus which the district court denied. While a member of the Black Gangster Disciples gang, Mack attempted to murder an adversary who had "disrespected" a fellow gang member. Mack shot the youth from a moving car. While wounding the youth, Mack also shot and killed an eleven-year-old boy standing nearby. Mack, along with the driver of the car, Adrian Hennon, and another passenger were arrested soon after. Mack and Hennon's cases were severed and they were tried simultaneously before separate juries, with Hennon's defense case following Mack's. Both juries convicted. After exhausting his direct appeals, Mack filed the habeas petition now before us. Mack claims he was denied his constitutional right to a fair trial by the state trial court's refusal to completely sever his case from Hennon's and its failure to reorder the trial so that Hennon's defense case would precede

Mack's, permitting Hennon to testify on Mack's behalf. Because we find no constitutional error with Mack's trial, we affirm the district court's denial of the writ.

## I.

### A. The Shooting

At Mack's trial, the State of Illinois introduced through eyewitness testimony evidence of the following chain of events:[1] On Friday, September 9, 1988, Darren Harris, Devon Miller, Jason Murray, Elwood Verrett, Esau Asad, and Esau Asad's eleven-year-old brother Abdulah Asad were standing together in a public park across from the Chicago Vocational High School. Several other young men in a Suzuki Samurai drove up and began yelling at Jason Murray after Murray crossed the street to get ice cream. The Suzuki left but returned shortly accompanied by a grey Chevrolet Nova containing Terrance Mack, Adrian Hennon, and Richard Terrell. The men in both cars, including Mack, were members of the Black Gangster Disciples gang.

Several of those in the cars began yelling and "throwing gang signs" at the young men in the park. The young men in the park testified that they yelled back at the others to leave them alone, that they were not members of any gang. Mack disputed this point at trial. He accused the other young men of being members of the Vice Lords, although he also testified he had never seen them before. Other than Mack's accusation from the stand neither the State nor Mack's attorney elicited any testimony or introduced any evidence that the young men in the park belonged to any gang. During the confrontation at the park, Mack pointed people out and shouted, depending upon whose testimony we believe, "shoot him," "pop him,"[2] or "pop that shorty."

The Black Gangster Disciples then reentered the Suzuki and Nova and drove down the street. Verrett testified that he saw Mack and Hennon get into the Nova. The Suzuki drove off but the Nova turned around and passed in front of the young men in the park. According to Verrett, as the Nova drove by Terrance Mack stuck his arm out the window and fired a number of shots in the direction of the young men in the park. All of the others who were shot at testified at trial that they clearly saw Mack shooting from the front passenger's window while Hennon was driving the car.

The apparent target of the shooting, Jason Murray, was shot in the arm. Eleven-year-old Abdulah Asad was shot in the back. His brother Esau Asad carried Abdulah to a police car that arrived at the far end of the park, and cared for him as the car raced the Asad brothers and Jason Murray to the hospital. Abdulah Asad was dead on arrival from a bullet having passed through his heart.

### B. The Arrest

Within minutes of the shooting, and while en route to the hospital, police officer Earl Parks radioed an alert with a description of the grey Nova, which witnesses had described to Parks as the injured young men were loaded into the police car. Cruising several blocks away, Officer Ronald Forgue heard the call and five or six minutes later observed a car matching the description pass him going the other direction. Officer Forgue pursued the Nova, which attempted to escape at high speed. Several minutes later, the car stopped for a moment under a viaduct and Mack and Terrell unsuccessfully attempted to flee on foot. The police apprehended them and took them to the police station. Hennon, who fled in the car while the police pursued Mack and Terrell, was arrested soon after.

Later that evening, Mack and Hennon were presented in a police lineup to three of the eyewitnesses, Esau Asad, Harris, and Miller. Each identified Mack as the shooter and Hennon as the driver of the Nova. Asad,

1. Pursuant to 28 U.S.C. § 2254(d), we rely on the facts as ascertained by the Illinois Appellate Court in its opinion in *People v. Mack*, 238 Ill. App.3d 97, 179 Ill.Dec. 333, 606 N.E.2d 165 (1992). *Lewis v. Huch,* 964 F.2d 670, 671 (7th Cir.1992). Where necessary we also rely on the trial transcript of *People v. Mack*, No. 88–CR–15413 (1989).

2. Gang slang for "shoot him."

Harris, and Miller, along with eyewitnesses Verrett and Murray also identified Mack and Hennon at trial as the shooter and driver respectively. They also testified that they had never seen Mack prior to the confrontation preceding the shooting. Mack, Hennon, and Terrell were subsequently indicted and charged with first-degree murder and armed violence for the shooting of Abdulah Asad, and attempted first-degree murder, aggravated battery, and armed violence for the shooting of Jason Murray.

## C. The Trial

All three defendants were tried in front of the same judge. As a preliminary matter, the judge severed the trials of all three defendants, but ordered that Mack and Hennon be tried simultaneously before separate juries; Terrell's case was set for a later date because it was not in a posture to go to trial.

The judge ordered that at Mack and Hennon's trials, the government would present its case in front of both juries, but the individual juries would hear only the cross-examination conducted by the defendant's attorney whose case that jury was deciding. In other words, when Mack's attorney cross-examined the government's witnesses, Hennon's jury would be excused, and vice versa. Mack's defense case would then proceed, as his name was first on the indictment. At the conclusion of Mack's defense the case would be sent to the jury hearing his case and Hennon would proceed with his defense.[3] Both Mack's and Hennon's attorneys timely objected to this approach, preserving the issue for appeal.

## D. Mack's Defense

At trial, Mack's sole theory of defense was misidentification—that he was not the gunman. Mack testified that although he had been in the Nova when it arrived at the park, and although he had been in the Nova shortly after the shooting when it was fleeing from the police, he had not been in the Nova during the time period in between, when somebody else riding in the Nova had shot at the boy and the witnesses from the front passenger's window. Mack testified that following the initial confrontation by the park, he had entered the Suzuki and another member of the gang, Terrance Hill, had entered the Nova in his place. Mack also testified that upon leaving the park, he rode in the Suzuki to his grandmother's house where he also lived. He remained there for fifteen minutes with his aunt, his uncle, one of his uncle's friends, and his grandmother. According to Mack, Hennon then drove up in the Nova with Terrell and they spoke for four minutes before Mack got into the Nova with them and drove off. Soon after, the police car began to pursue them and Hennon sped up to escape from the police. When Hennon slowed down under the viaduct, Mack and Terrell got out and attempted to flee from the police on foot but were apprehended.

To corroborate his story, Mack's aunt testified that at around 3:30 or 4:00 p.m., Mack came by and spoke with her on the steps of her mother's house. While they were speaking Terrell and another person drove up in the Nova and Mack went to the car, got in, and left. Mack's aunt testified Mack was with her for about twenty minutes before the Nova arrived. On cross-examination she admitted she had earlier told investigators that Mack had been at the house thirty minutes before the Nova arrived and that Mack had spoken with the men in the car for ten or fifteen minutes before leaving with them, for a total presence at her house of forty to forty-five minutes.

Mack also attempted to call Adrian Hennon on his behalf. Hennon had provided the police with two different versions of the events: in one statement he named Hill as the gunman, in the other he named Mack. Mack apparently believed that Hennon would now stick to the story that Hill was the gunman. Hennon, whose defense case was to follow Mack's, refused to testify pursuant

---

3. In fact, Hennon's defense began before Mack's case was sent to the jury because Mack was still awaiting a witness and Hennon's defense was ready to proceed. However, Mack's case was sent to the jury as soon as his last witness testified and jury instructions and closing arguments were complete, and Hennon's defense continued thereafter.

to his Fifth Amendment right against self-incrimination.

On several occasions prior to calling Hennon to testify, Mack's attorney had notified the court of his intent to call Hennon. Mack's attorney also asked the court to sequence the trial so that Hennon's defense could precede Mack's, enabling Hennon to testify at his own trial before being called by Mack. However, the trial court denied Mack's request and ordered that the severed trials proceed in the order in which the defendants appeared on the indictment: Mack first, Hennon second. After Mack completed his defense, Hennon testified in his own defense before the separate jury considering his case. Hennon's testimony was consistent with his first statement to the police. He claimed that he dropped Mack off at his grandmother's house, that Hill had shot the gun, that they had dropped Hill off, picked up Mack at his grandmother's house, and then were apprehended by the police. Hennon also testified that Terrell was driving the car during the shooting and that he and Terrell had changed places before the police apprehended them.

Mack's jury began deliberating at 9:00 p.m. on October 13th. At around midnight the jury sent out a note saying they were getting nowhere and asking if they could get some sleep. After resuming deliberations the next morning at 9:00 a.m., Mack's jury convicted him on all counts at around 11:50 a.m. Two days later, Hennon's jury convicted him on all counts. Terrell eventually pleaded guilty to two counts of the indictment. Mack was subsequently sentenced to 60 years in prison; Hennon to 40 years.

### E. Post-Conviction

Mack unsuccessfully appealed both his conviction and his sentence to the Illinois Appellate Court. *People v. Mack*, 238 Ill. App.3d 97, 179 Ill.Dec. 333, 606 N.E.2d 165 (1992). The appellate court rejected, among other issues, Mack's allegation that the simultaneous trials "encroached upon his constitutional right to present his theory of the case." *Id.* 179 Ill.Dec. at 339, 606 N.E.2d at

171. Thereafter, Mack sought a writ of habeas corpus from the United States District Court for the Northern District of Illinois. The district court denied Mack's petition and he appeals.

### II.

Mack contends he was unconstitutionally deprived of his right to a fair trial, secured by the Sixth and Fourteenth Amendments to the U.S. Constitution, because the sequence of his trial in relation to that of his codefendant denied him the opportunity to call witnesses on his behalf. Specifically, Mack argues that the trial court's refusal to change the sequence of his and Hennon's simultaneous trials denied him the opportunity to call Hennon, who, Mack argues, would have exculpated him.

*A.*

Our review of a denial of *habeas corpus* is plenary. *United States ex rel. Partee v. Lane*, 926 F.2d 694, 700 (7th Cir. 1991), *cert. denied*, 502 U.S. 1116, 112 S.Ct. 1230, 117 L.Ed.2d 464 (1992). Matters of severance and trial sequence are generally left to the sound discretion of a trial court. This is true in Illinois.[4] *People v. Bedell*, 253 Ill.App.3d 322, 191 Ill.Dec. 930, 935, 624 N.E.2d 1308, 1313 (1993). Illinois law favors the joint trial of codefendants: " 'Defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice.' " *Id.* 191 Ill.Dec. at 935, 624 N.E.2d at 1313 (quoting *People v. Byron*, 116 Ill.2d 81, 107 Ill.Dec. 192, 196, 506 N.E.2d 1247, 1251 (1987)). This follows the federal rule: "in considering a motion for severance, the trial judge should give due deference to the strong public interest in having persons jointly indicted tried together, especially where the evidence against the defendants arose out of the same acts or series of acts." *United States v. Atterson*, 926 F.2d 649, 657 (7th Cir.) (quoting *United States v. Pavelski*, 789 F.2d 485, 491 (7th Cir.1986)), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2909, 115 L.Ed.2d 1072 (1991). However, we may only grant habeas

---

4. Illinois law provides procedural discretion to its courts: "the court may order separate trials ... as justice may require." IL ST CH 725 § 5/114–8.

corpus relief to state prisoners for violations of federal law. 28 U.S.C. § 2254; *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Bae v. Peters,* 950 F.2d 469, 477 (7th Cir.1991). More specifically, federal habeas review of a state trial court's rulings on severance issues is limited to a determination of whether an abuse of discretion led to the deprivation of any rights secured by the Constitution. *Reed v. Clark,* 984 F.2d 209, 210 (7th Cir.1993), *aff'd. sub nom. Reed v. Farley,* —— U.S. ——, 115 S.Ct. 25, 129 L.Ed.2d 924 (1994).

In reviewing state court determinations on severance, we will not grant habeas relief unless the petitioner shows both that the trial judge abused his or her discretion in refusing to sever the trial and, further, that the refusal resulted in a trial that was fundamentally unfair. (Citations omitted.)

*Stomner v. Kolb,* 903 F.2d 1123, 1127 (7th Cir. 1990) (quoting *Madyun v. Young,* 852 F.2d 1029, 1033–34 (7th Cir.1988)).

■ To avoid prejudice in Mack's case, the trial court determined that the trials of the three codefendants would be severed, although Mack and Hennon would be tried simultaneously. Illinois permits the simultaneous trial of two defendants in the same courtroom before two juries. We have previously upheld the constitutionality of this innovation. *Smith v. DeRobertis,* 758 F.2d 1151 (7th Cir.), *cert. denied,* 474 U.S. 838, 106 S.Ct. 118, 88 L.Ed.2d 96 (1985). For such a trial to be unconstitutional, a defendant tried in such a trial must show some specific, undue prejudice. *Id.* at 1152. On appeal Mack claims that to the extent the order of the simultaneous trials deprived him of Hennon's testimony, it deprived him of his right to call witnesses in his defense.

*B.*

■ We have found no cases that directly address the issue of trial sequence in simultaneous trials of codefendants. However, we consider the analysis similar to that which we employ in reviewing issues of severance of codefendants in order to obtain codefendant testimony. We begin by noting that defendants have no inherent right to be tried in a certain order. *United States v. Van Hemel-*

*ryck,* 945 F.2d 1493, 1501 (11th Cir.1991); *United States v. DiBernardo,* 880 F.2d 1216, 1229 (11th Cir.1989); *cf. United States v. Gay,* 567 F.2d 916, 920 (9th Cir.) (severance does not create a right to be tried in a certain order), cert. denied, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978). Simultaneous trials, like all others, must have an internal order, with direct and cross-examination of the prosecution witnesses followed by the defendants' cases in chief. However, such trials must also have a sequence, with one defendant's case preceding that of the other. Defendants have no more right to the sequence of a simultaneous trial than they do to the sequence of separate trials.

■ Severance of codefendants does not create a right to a particular trial sequence. To provide otherwise would afford to defendants indicted together a right not held by defendants indicted separately. "The manifest purpose of the trial court [is] to insure that severance not be employed so as to grant to any of the defendants ... any benefits that they would not have enjoyed but for the joint indictment." *United States v. Gay,* 567 F.2d at 920. *See also, United States v. Poston,* 902 F.2d 90, 99 (D.C.Cir.1990) (severed codefendants have no right to be tried in certain order); *United States v. DiBernardo,* 880 F.2d at 1229 (same); *United States v. Blanco,* 844 F.2d 344, 352–53 (6th Cir.1988) (refusing to permit severance to be used as mechanism whereby codefendants control the order in which they are tried), *cert. denied,* 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988); *United States v. Becker,* 585 F.2d 703, 706 (4th Cir.1978) (severed codefendants do not gain benefit denied defendants indicted separately), *cert. denied,* 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979); *cf. Byrd v. Wainwright,* 428 F.2d 1017, 1022 (5th Cir. 1970) (trial court has discretion over sequence of severed trials).

■ Nor does a conditional offer to testify by a codefendant create a right to control trial sequence. The Ninth Circuit, in *United States v. Gay,* elaborated on the possible results of a contrary ruling. In *Gay,* two of three codefendants sought severance based upon the third codefendant's condition-

al offer to testify if his trial preceded that of the other two. The trial court refused to allow the defendants to "play games" and ruled that if severed "the separate trials would be scheduled and conducted under the same rules and with the same consequences as if the defendants had been separately indicted." 567 F.2d at 920. In light of the condition placed on the codefendant's offer to testify, the Ninth Circuit "decline[d] to hold that this was an unreasonable view for the trial court to take." *Id.* The Ninth Circuit is not alone in so holding. See *United States v. Parodi,* 703 F.2d 768, 779 (4th Cir.1983) ("a showing of willingness to testify if there is a severance is not met when that offer to testify is further conditioned on the codefendant's case being tried first" (citing cases from the Fourth, Fifth and Ninth Circuits)). Indeed, the Fourth Circuit discredited such a scheme "as in effect, a simple alibi-swapping device." *Id.* at 780 (commenting on the facts in *United States v. Frazier,* 394 F.2d 258, 261 (4th Cir.1968)). Pursuant to the decisions that have addressed the right to control the sequence of severed trials, we can easily conclude that Mack had no constitutional right to control the sequence of his separate but simultaneous trial with Hennon.

## C.

█ Not only does Mack possess no constitutional right to have Hennon's trial precede his, had the two cases not been severed, Mack's desire to have Hennon testify, absent anything else, would not have mandated severance in this circuit. We have previously set out a three-part test to determine whether severance must be granted in a situation where a defendant seeks the exculpatory testimony of a codefendant: "(1) whether the codefendant's testimony would in fact be exculpatory; (2) whether the codefendant would in fact testify; and (3) whether the testimony would bear on defendant's case." *United States v. Tolliver,* 937 F.2d 1183, 1189 (7th Cir.), *cert. denied,* 502 U.S. 919, 112 S.Ct. 329, 116 L.Ed.2d 269 (1991). See also

*United States v. Lopez,* 6 F.3d 1281, 1285 (7th Cir.1993).

█ Mack fails to meet either the first or second element of the *Tolliver* test. On the question of whether Hennon's testimony would be exculpatory, Mack made no proffer to the court about the content of the expected testimony from Hennon. While it may be true, as Mack argues, that Illinois rules do not require affidavits, it is also true that the trial court must have some evidence that a codefendant's testimony will exculpate a codefendant before we will rule that the denial of severance violated the U.S. Constitution. "Severance cannot be granted on the basis of a vague, unsupported assertion that a codefendant would testify favorably in a separate proceeding." *Tolliver,* 937 F.2d at 1189 (quoting *United States v. Andrus,* 775 F.2d 825, 847 (7th Cir.1985)). In this case, Hennon had provided two different statements, one exculpating Mack, followed by one inculpating Mack. At least one statement was a lie, although the court could not know which. While the trial court might guess that Mack expected Hennon to testify to the former, the court had no evidence of this before it.[5] Had Hennon testified consistently with his statement exculpating Mack, he would have been impeached by a statement that not only contradicted such testimony, but corroborated that of the eyewitnesses in naming Mack as the gunman. Thus the trial court did not know whether Hennon's testimony would exculpate Mack.

The trial court also had no evidence that Hennon actually intended to testify—the second element of the *Tolliver* test. All the court had was Hennon's conditional offer to do so. While this court has not considered whether a codefendant's conditional offer to testify satisfies the second element of the *Tolliver* test, other circuits that have considered the issue have held that trial courts need not accept conditional offers to testify as representing a clear intent to testify, thus requiring severance. *United States v. Mariscal,* 939 F.2d 884, 886 (9th Cir.1991) (court

---

5. Later, as noted above, Hennon testified that Hill rather than Mack had been the gunman. Our review is limited, however, to the state of the record at the time the court denied the motion;

it does not include enlightened hindsight after testimony is given. *Stomner v. Kolb,* 903 F.2d 1123, 1127 (7th Cir.), *cert. denied,* 498 U.S. 924, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990).

does not abuse its discretion in refusing codefendant's offer to testify conditioned on codefendant's trial being completed first); *United States v. Espinosa*, 771 F.2d 1382, 1408 (10th Cir.) (same), *cert. denied*, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985); *United States v. Ford*, 870 F.2d 729, 731–32 (D.C.Cir.1989) (conditional offer does not demonstrate willingness to testify); *United States v. Parodi*, 703 F.2d at 779–80 (same); *United States v. Blanco*, 844 F.2d at 352–53 (offer to testify illusory where conditioned on being tried first).

■■■ Given this circuit's holdings on severance of codefendants for the purpose of obtaining codefendant testimony, on the facts before us Mack was not constitutionally entitled to have Hennon's trial severed in order to obtain Hennon's testimony. The offer to testify was conditional on Hennon's trial preceding Mack's and it was not clear if, or to what Hennon would testify. Because these facts would not mandate even severance, the court could not have abused its discretion in declining Mack's demand to reorder the sequence of the trials.

*D.*

We conclude by noting that even if the trial court had been obligated to sequence the trials of the three codefendants in this case in the order most conducive to Mack's defense, based on the motions before the court it would have been impossible to do so. During the course of the trial, counsel for Mack and Hennon each informed the court of several different and mutually exclusive trial sequences that would be required in order to free the three defendants to testify. The trial court granted severance at a pretrial suppression hearing on October 3, 1989. At the same hearing, the court set Mack and Hennon for simultaneous trials before two juries. Codefendant Richard Terrell's trial was set for a later trial because the case was not yet in a "posture" to go to trial. During the suppression hearing Hennon testified to having provided two statements to the police: the first exculpating Mack and the second inculpating him. Following Hennon's suppression hearing testimony, Mack's attorney informed the court that based on what they

had just heard, Mack would seek to call Hennon as a witness for Mack. At the same hearing, Hennon's attorney advised the court that they would seek to call Terrell and that Hennon's trial should trail that of Terrell and Mack.

On October 11, 1989, once the simultaneous prosecution of Mack and Hennon had begun, Hennon's attorney again informed the court of Hennon's intent to call Terrell because "Terrell's statements indicate that he was the driver of the car." In addition, and more importantly, Hennon's attorney informed the court that Hennon would seek Mack's testimony. However, Mack was still indicating a vague intent to call Hennon; his attorney told the court, "there may be the possibility we'd seek to call the defendant Hennon."

At this point the court offered to switch the order of the defense cases and permit Hennon to go first, but neither attorney seized on the offer and the district attorney pointed out that they would then have the same problem in reverse. Instead, Hennon's attorney proposed keeping Mack's trial open until Hennon testified in his own trial so that Mack's jury could sit in and hear Hennon's testimony. Mack's attorney agreed with this idea but the court rejected it because the cases had already been severed (on defendants' motions) and such a procedure would lead to jury confusion about whose witness Hennon was, especially since Hennon's attorney would be conducting the direct examination. So the trial proceeded in the sequence originally set by the court, as determined by the order in which the defendants' names appeared on the indictment. On October 12, 1989, Mack sought to call Hennon and Hennon declined pursuant to his Fifth Amendment privilege.

A trial court presented with two severed codefendants who each seek to call the other as a witness does not commit error when it proceeds, as it must, by setting one trial ahead of the other. To hold otherwise would provide to codefendants a mechanism to obtain reversals based on cleverly orchestrated demands for codefendant testimony. The court went to the extraordinary length in this case of offering to switch the order of the

defense cases but when actually presented with the option neither counsel expressed an interest. Given this chain of events, even if the court was required to afford defendants the maximum deference in setting trial sequence, doing so would have been impossible in this case. Having concluded that in fact a defendant has no right to have his case tried in any particular order, the factual framework of this case buttresses our conclusion that the Constitution does not provide Mack with a remedy.

### III.

For the foregoing reasons, the district court's denial of Terrance Mack's petition for a writ of habeas corpus is affirmed.