UNITED STATES of America

v.

**Joseph A. PINGARO, Jr.,
and Christina Scola.**

**Criminal No. 09–10095–PBS.**

United States District Court,
D. Massachusetts.

May 9, 2011.

Amy H. Burkart, James D. Herbert, Michael L. Tabak, United States Attorney's Office, Boston, MA, for Plaintiff.

Howard M. Cooper, Brian E. Murphy, Todd & Weld LLP, Charles W. Rankin, Rankin & Sultan, Boston, MA, for Defendants.

### AMENDED MEMORANDUM AND ORDER

PATTI B. SARIS, District Judge.

Christine Scola ("Scola") and Joseph Pingaro ("Pingaro") have been indicted on 67 counts, including a *Klein* tax conspiracy, tax evasion, subscribing false tax returns, structuring conspiracy, and 57 counts of illegal structuring of cash transactions. Scola moved to sever her trial, alleging that Pingaro will testify on her behalf as long she is tried separate from and subsequent to his trial. Pingaro submitted an affidavit regarding the exculpatory testimony he would provide on Scola's behalf, and the government submitted a proffer about its evidence of Scola's role in the alleged crimes. The Magistrate Judge recommended that the Court deny Scola's motion. (Document 120.)

After a review of the objections, the Court *ADOPTS* the report and recommendation ("R & R") and *DENIES* the motion to sever.

### DISCUSSION

In December 2010, Scola filed a motion to sever supported by an affidavit from Pingaro regarding the testimony he would provide on Scola's behalf if he were tried in a separate and preceding trial. (Pingaro Aff. ¶ 2.) The evidence he would allegedly provide includes: 1) how Scola and Pingaro's business—J & J Metals—"kept track of the cost of goods sold" and relayed these figures to the accountants who prepared the tax returns at issue in this case; 2) Scola's limited role in the operation of J & J Metals and the tracking of goods sold; 3) "the fact that [Scola] did not physically work at" J & J; 4) her "lack of any first-hand or significant knowledge of the cost of goods sold by J & J Metals;" 5) instructions Scola received about how to structure banking transactions based upon the advice of accountants; and 6) that Scola received all information about day-to-day operations from Pingaro. (*Id.* ¶ 3.)

■ The Magistrate Judge evaluated the motion under the First Circuit's rule in *United States v. Drougas*, 748 F.2d 8 (1st

Cir.1984), in which the court applied a four factor test to determine if a defendant could sever her trial on the basis of the testimony of a co-defendant. "In order to be entitled to a severance on the basis of a codefendant's testimony the movant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the codefendant will in fact testify if the cases are severed." *Id.* at 19 (citations omitted). The Report and Recommendation found that Scola could not meet the fourth element because she could not establish that Pingaro's offer to testify, conditioned upon him being tried in a separate and preceding trial, meant that he would "in fact testify if the cases [were] severed." R & R at 3. In arriving at this conclusion, the Magistrate Judge relied on case law holding that "an offer to testify, conditioned on one defendant being tried before the other, fails to satisfy the elements of a prima facie case for severance." *See United States v. Smith,* 46 F.3d 1223, 1231 n. 3 (1st Cir.1995) (noting that four other circuits had " . . . ruled that an offer to testify, conditioned on one defendant being tried before the other, fails to satisfy the elements of a prima facie case for severance." (citing *United States v. Washington,* 969 F.2d 1073, 1080 (D.C.Cir., 1992); *United States v. Blanco,* 844 F.2d 344, 352–53 (6th Cir.1988); *United States v. Haro–Espinosa,* 619 F.2d 789, 793 (9th Cir., 1979); *United States v. Becker,* 585 F.2d 703, 706 (4th Cir., 1978))).

Particularly given the high showing she must make in order to demonstrate a need to sever, Scola has not shown that the Report and Recommendation was in error. *See United States v. DeLeon,* 187 F.3d 60, 63 (1st Cir.1999) ("To overcome the district court's presumption in favor of joinder, [the defendant] must demonstrate prejudice so pervasive that it would be likely to effect a miscarriage of justice.").

For all of the reasons stated by the Magistrate Judge, the Court does not believe that Scola's motion withstands the fourth factor of the first part of the *Drougas* test, but even if it did, Scola has not shown that *Drougas'* secondary factors militate in favor of severance. After a movant has demonstrated that she meets *Drougas'* primary factors, a court must "(1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) consider whether the testimony would be subject to substantial, damaging impeachment; (3) assess the counter arguments of judicial economy; and (4) give weight to the timeliness of the motion." *Drougas,* 748 F.2d at 21.

Scola has not shown that Pingaro's testimony, as understood on the basis of his sparse affidavit, would be substantially beneficial to Scola's defense. The crux of the charges in this case is the defendants' alleged illegal structuring of cash transactions in order to siphon funds from J & J Metals for the defendants' personal use without drawing the attention of federal tax authorities, and the reporting of fraudulent information on tax returns which overstated the cost of goods sold by J & J and underreported J & J's taxable income. The extent of Scola's involvement in J & J Metals is relevant to her prosecution, but there are other witnesses who likely have personal knowledge of this information.

For example, the government has proffered that, at trial, it will compel Scola's brother to testify. Scola's brother worked at J & J Metals as a partner of Pingaro's for a number of years until 2001. (*See* Doc. 101 at p. 7.) He has personal knowledge of Scola's responsibilities at J & J until that point. (*Id.* at p. 8.) Furthermore, in regard to the illegal cash transactions, Pingaro's affidavit references that in engaging in the alleged cash transactions Scola and Pingaro were acting upon the

advice of J & J accountants. Although the affidavit is not entirely clear on this point, it seems that Scola could call J & J's accountant to address the cash transactions and his or her understanding of Scola's role in executing them.

As for Scola's role in the overstating of J & J's costs, Pingaro's affidavit does not reveal how his testimony could help Scola's case beyond merely stating that Scola had no personal knowledge of the cost of goods sold by J & J Metals. However, these bare assertions are an insufficient basis for severance. *See United States v. Smith*, 46 F.3d 1223, 1232 (1st Cir.1995) ("[T]he co-defendant's proffer has to do more than assert ultimate facts").

█ Moreover, even if Pingaro were to testify, his testimony would face daunting credibility issues. Along with his incentives to testify on his wife's behalf, the jury would also be made aware of Pingaro's considerable criminal history, including multiple convictions for perjury and obstruction.

█ The interests of judicial economy also counsel against severance. This case is immensely complicated and resource intensive. The trial is expected to last about three weeks and involve a large number of witnesses. Moreover, if convicted, Pingaro could insist on delaying Scola's trial for years while his case made it through appeals and sentencing during which period his testimony could still prejudice his case. Such a delay would not be in the public's interest.

Based on this record, after weighing all the factors, the court denies the motion to sever. Defendants have offered to provide an in camera proffer of more detailed information. It is unclear why such an affidavit has not been filed or whether it would be timely at this point. The court

reserves the right to reconsider the ruling if appropriate.

## ORDER

The Report and Recommendation (Document 120) is **ADOPTED** and Scola's Motion to Sever (Document 82) is **DENIED.**

## REPORT AND RECOMMENDATION ON DEFENDANT CHRISTINE SCOLA'S MOTION TO SEVER, ETC. (# 82)

ROBERT B. COLLINGS, United States Magistrate Judge. .

In her motion to sever (# 82), defendant Christine A. Scola ("Scola") seeks to sever her case for trial from the case against co-defendant Joseph A. Pingaro, Jr. ("Pingaro"). Although the motion was filed on December 6, 2010, it was not referred to the undersigned until January 5, 2011. The motion was heard on February 16, 2011. The Government opposes the motion, and both sides have filed numerous pleadings on the issue.[1]

In a nutshell, Pingaro and Scola are charged with, among other things, four counts of tax evasion on their 2002, 2003, 2004 and 2005 joint returns, four counts of subscribing to false returns for the same years, and of illegally structuring transactions. Each is named in every count of the indictment. Pingaro is Scola's husband, and she wishes to call Pingaro as a witness to testify to facts which it is alleged will be exculpatory to her but, presumably, inculpatory as to him. The proposed scenario is set forth in an affidavit in which Pingaro avers that he:

"... possess[es] information, which if offered through my testimony at a trial of my wife, Christine, would establish her innocence. I intend to invoke my 5th Amendment rights and will not testi-

---

1. *See ## 87, 89, 101, 105, 107.*

fy at any trial in which I am a defendant whether alone or with Christine. If I am tried before Christine and my case is completed, I will testify at her trial. Affidavit, Etc., # 82–1 ¶ 2.

Both sides assert that in determining the issue, the Court must apply the case of *United States v. Drougas*, 748 F.2d 8 (1st Cir., 1984) in which the First Circuit held that:

> In order to be entitled to a severance on the basis of a codefendant's testimony the movant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the codefendant will in fact testify if the cases are severed.

*Drougas*, 748 F.2d at 19 (citations omitted).

There is a genuine issue as to whether Scola has failed to establish the fourth prerequisite because of the conditional nature of Pingaro's offer to testify, i.e., that the offer is conditioned on Pingaro being tried first.

Sixteen years ago the First Circuit did not decide the issue in the case of *United States v. Smith*, 46 F.3d 1223 (1st Cir.), *cert. denied*, 516 U.S. 864, 116 S.Ct. 176, 133 L.Ed.2d 116 (1995), but noted that four other circuits had "... ruled that an offer to testify, conditioned on one defendant being tried before the other, fails to satisfy the elements of a prima facie case for severance." *Id.* at 1231, n. 3 (citing *United States v. Washington*, 969 F.2d 1073, 1080 (D.C.Cir., 1992), *cert. denied*, 507 U.S. 922, 113 S.Ct. 1287, 122 L.Ed.2d 679 (1993)[2]; *United States v. Blanco*, 844 F.2d 344, 352–53 (6th Cir.), *cert. denied*, 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626

(1988); *United States v. Haro–Espinosa*, 619 F.2d 789, 793 (9th Cir., 1979); *United States v. Becker*, 585 F.2d 703, 706 (4th Cir., 1978), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979)). Both the *Haro–Espinosa* and the *Becker* courts also cite to the decision in *United States v. Gay*, 567 F.2d 916, 918–20 (9th Cir.), *cert. denied*, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978).

The Fourth Circuit has been consistent in its approach. It has reaffirmed its holding in the *Becker* case at several points. In the case of *United States v. Parodi*, 703 F.2d 768 (4th Cir., 1983), the Court wrote plainly that "... the requirement of a showing of willingness to testify if there is a severance is not met when that offer to testify is further conditioned on the codefendant's case being tried first." *Id.* at 779–80 (citing *Becker*, 585 F.2d at 703, 706; *United States v. Frazier*, 394 F.2d 258, 261 (4th Cir.), *cert. denied*, 393 U.S. 984, 89 S.Ct. 457, 21 L.Ed.2d 445 (1968), *Haro–Espinosa*, 619 F.2d at 793, and *United States v. Ruppel*, 666 F.2d 261, 268–69 (5th Cir.), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982)).

The First Circuit's opinion in Smith was issued on February 10, 1995. Eleven days later the Fourth Circuit reiterated its holding in *Becker* in the case of *United States v. Reavis*, 48 F.3d 763 (4th Cir.), *cert. denied*, 515 U.S. 1151, 115 S.Ct. 2597, 132 L.Ed.2d 844 (1995). Quoting from its decision in the Becker case, the Court wrote that:

> Were we to accede to the co-defendant's demand [that he be tried first], we would 'create a situation where, following his own trial, the witness would be more inclined to "throw a bone" to his

---

**2.** Three years earlier in the case of *United States v. Ford*, 870 F.2d 729, 732 (D.C.Cir., 1989), the D.C. Circuit was faced with the same situation where a defendant asserted that a co-defendant (one Green) would testify

for him if Green's trial went first. The Court wrote that a "... conditional showing does not satisfy the requirement that [a defendant] demonstrate a reasonable probability of Green's willingness to testify."

codefendants by testifying favorably to them because his own case had been disposed of and he had little to lose by testifying.'

*Reavis,* 48 F.3d at 767 (quoting *Becker,* 585 F.2d at 706).

The Seventh Circuit, like the First, while not deciding the issue, has noted the line of cases that "... courts need not accept conditional offers to testify as representing a clear intent to testify, thus requiring severance." *Mack v. Peters,* 80 F.3d 230, 236 (7th Cir., 1996)[3] (citing *United States v. Mariscal* 939 F.2d 884, 886 (9th Cir., 1991); *United States v. Espinosa,* 771 F.2d 1382, 1408 (10th Cir.), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985); *United States v. Ford,* 870 F.2d 729, 731–32 (D.C.Cir., 1989); *Parodi,* 703 F.2d at 779–80; *Blanco,* 844 F.2d at 352–3).

The Second Circuit has added its voice to the issue. In *United States v. Spinelli,* 352 F.3d 48 (2th Cir., 2003), one co-defendant had offered to testify in favor of a second co-defendant but only if the second co-defendant "... was tried separately and subsequently." *Id.* at 56. It "noted that such conditional orders 'smack[ ] of bad faith'." *Id.* (quoting *United States v. Bari,* 750 F.2d 1169, 1177 (2th Cir., 1984)).

The Tenth Circuit has flatly held:

A defendant can not establish the willingness of a codefendant to testify on his behalf if the co-defendant's offer is 'further conditioned on the co-defendant's case being tried first.'

*Espinosa,* 771 F.2d at 1408 (quoting *Parodi,* 703 F.2d at 779).

■ The Court does not perceive the instant case to warrant an exception to this

principle which a majority of the circuits has endorsed.[4] The Court rules that Pingaro's offer to testify, conditioned as it admittedly is upon his trial (and presumably subsequent appeals if convicted) being completed before he testifies, is insufficient for Scola to demonstrate that Pingaro will testify as required by Drougas.

Accordingly, I RECOMMEND that Defendant Christine Scola's Motion to Sever, Etc. (# 82) be DENIED.

Pursuant to Rule 59(b)(2), Fed.R.Crim. P., the parties are hereby advised that any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply the requirement of filing timely objections shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services,* 848 F.2d 271 (1st Cir., 1988); *United States v. Emiliano Valencia–Copete,* 792 F.2d 4 (1st Cir., 1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir., 1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir., 1980); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

---

3. *Mack* was before the Seventh Circuit on a petition for writ of habeas corpus from a state court conviction. However, the Court "... consider[ed] the analysis similar to that which we employ in reviewing issues of severance of

codefendants in order to obtain codefendant testimony." *Mack,* 80 F.3d at 235.

4. There can be exceptions. *See Gay,* 567 F.2d at 921.